MAITLAND, The (WOLF v.). See Case No. 8,979.

MAJESTIC, The. See Cases Nos. 17,005 and 17,006.

## Case No. 8,981.

In re MAJOR.

Ex parte CARTER'S EX'R.

Ex parte MOORE.

[2 Hughes (1877) 215.] [1]

District Court, E. D. Virginia.[2]

BANKRUPTCY — ENCUMBERED PROPERTY — SALE WITHOUT NOTICE—PETITION TO SET ASIDE—EXECUTORS—FUND COLLECTED —PROPER COURT TO PASS UPON DISTRIBUTION.

1. Where lands held by liens are sold by a bankruptcy court free of incumbrances, without

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
[2] [Affirmed by circuit court (case unreported).]

notice to lien creditors, the same court may at any time thereafter, on proper petition and notice to the purchasers, set aside such sale as null and void as to lien creditors without notice.

[See Ex parte Bryan, Case No. 2,061.]

2. Where the executor of an estate, who is the officer of a state court, in respect to the estate is a lien creditor of an estate in bankruptcy, and recovers from that court the debt due him, the state court of which the executor is an officer is the proper tribunal to control and pass upon his distribution of the fund received by him from the bankruptcy court.

In bankruptcy.

HUGHES, District Judge. Samuel B. Major filed his petition in bankruptcy on the 1st of September, 1868, and was duly adjudicated as a bankrupt. He surrendered personal estate, and between six and seven hundred acres of real estate capable of being sold in separate tracts. There were judgments against him as principal and surety binding as liens upon his real estate to the amount of more than ten thousand dollars, due to some ten or twelve lien creditors. He had made, in May, 1868, a deed of trust for the general benefit of his creditors conveying to a trustee all his estate, worth not more than six thousand dollars. In due course of proceedings Walter W. Wood was chosen his assignee, but gave no bond as such. Elisha Barksdale was at the time and continued to be the law partner of W. W. Wood, and acted as counsel for the assignee in the progress of the cause. On the 12th of January, 1869, this assignee filed a petition in this court setting forth that certain judgments had been obtained against the bankrupt, some of them at dates longer than four months before the petition in bankruptcy, others within the period of four months, making no mention of judgments which had been taken against the bankrupt as surety, and setting forth the execution of the deed of trust of May, 1868, by the bankrupt. He prayed that as this deed had been executed within four months before the bankruptcy, and as certain judgments had been also obtained within that period, the same might be declared null and void; that E. B. Jeffries, the trustee in the said deed, be required to convey to himself, the assignee, the property covered by the said trust deed, and that he might have an order of court for the sale of the real estate of the bankrupt free of all incumbrances. On the same day on which this petition was filed, without notice to the trustee, Jeffries, or to any or either of the lien creditors, the then judge of this court signed an order directing Jeffries, the trustee, to convey to the assignee the property embraced in the trust deed, and directing the assignee to make sale of the real estate thus implicated, free of liens and of all incumbrances except the contingent right of dower of the bankrupt's wife. No account of liens or incumbrances had been taken or of their priorities at that time. The assignee in pursuance of this decree, on April 7th, 1869, sold all the real estate in question, and his

counsel, E. Barksdale, bought three hundred and one acres of this real estate, which is the tract now in question, at the price of $1565.20. The order of sale was made on the 12th day of January, 1869. The sale, thus uncertain as to its real date, was not reported to the court, nor the report of it filed in the record, until the 22d of September, 1869, and on that same day, without opportunity being allowed for exceptions, and without notice to any human being, the sale was confirmed by the then judge of this court, and deeds ordered to be made to the purchasers on payment. On the 29th of December, 1869, this assignee conveyed the three hundred and one acres which have been named, by deed to the said E. Barksdale, before any money was paid him by said Barksdale as the purchase-money for the property. Some time afterwards, however, Barksdale claimed before a commissioner that he subsequently became entitled to credits from the estate (including a fee as counsel for this assignee) to an amount approximating the price he had bid for the land.

There were various proceedings from time to time in after years against the assignee, charging and implying default or misapplication as to funds in his hands, and especially as to the purchase-money of the land he had sold. These proceedings resulted in the removal of Wood as assignee, and the substitution of W. H. Allderdice in his stead. On the 10th of March, 1873, the new assignee, Allderdice, filed his petition alleging that although four years had elapsed, the purchasers of the several tracts of real estate from Wood, his predecessor, had not paid the purchase-money due by them and had all the time remained in possession of the land they had claimed to purchase without paying rent, and asking authority to resell. These allegations were afterwards shown not to be true as to one of the purchasers, J. M. Carrington, of one of the tracts. On the same day on which this petition of Allderdice for a re-sale was filed, its prayer was granted, and a resale ordered without notice to any one. Confining the remainder of this recital of facts to the three hundred and one acres which had been purchased by Barksdale: A resale was not made under this order. On the 12th of November, 1873, on the "application" of J. J. Hill, by attorney, and of C. H. Cabaniss, executor of Samuel Carter, whose judgment liens had priority of others in the funds arising from the sale of the bankrupt's lands, another order was made for resale. No notice or rule had been served upon other lien creditors, or upon purchasers under the order of 12th January, 1869, and under the sale of 7th April, 1869, of this "application," which must have been made orally to the court. Under this order, made on the 12th November, 1873, the assignee, Allderdice, made sale, on the 12th December, 1873, of three hundred and one acres in question, and made report of the sale on the 18th February,

1874. But this report, filed on the day last named, embraced a note by the assignee, which stated that although this land had been cried out to W. V. B. Moore, yet that Moore having failed to comply with the terms of the resale, one M. Palmer had agreed to take the land at Moore's bid, and that the assignee therefore had contracted with him, and he now reported his sale as having been made to M. Palmer. On the 3d of December, 1873, an order was obtained from Judge Underwood, by E. Barksdale, setting aside the order "entered on the 11th day of November, 1873," meaning doubtless the order made on the 12th of November, 1873. This last-named order was made in advance of the sale made by Allderdice on the 12th December, 1873. It is in the handwriting of E. Barksdale, was signed "John C. Underwood," and must have been personally held by E. Barksdale, as it was not filed in the record of this cause until the 20th of January, 1874, until which filing it had no validity; and, of course, the sale made by the assignee on the 12th December, 1873, was made in ignorance of its existence. Judge Underwood died in the latter part of December, 1873, and this cause came before the present judge of this court with the record showing the first assignee to have been removed for having been largely in default, and incumbered with the illegal and futile orders and reports of sale which have been described. The matter of the 301 acre tract of land had been further complicated by the first purchaser, E. Barksdale, having delivered possession of the tract, under what they believed to be a purchase from him, to two of his nieces, and by one of the nieces having intermarried with W. V. B. Moore. It seems that the judgment of J. J. Hill, one of the lien creditors, was settled in part out of the sale which had been made of another part of the bankrupt's land to J. M. Carrington. But neither from the sale to Barksdale, nor from that to Palmer, was the judgment lien in favor of Carter's estate satisfied, in whole or part.

Such being the position of affairs, the present judge of this court, on the 12th of March, 1874, made an order, on motion of Allderdice, the assignee, consented to by E. Barksdale, purchaser under the illegal sale of 7th April, 1869, and by M. Palmer, purchaser under the illegal sale of 12th December, 1873, and by C. H. Cabaniss, the representative of Carter's estate, for a resale of the 301 acre tract of land. By this order W. R. Barksdale was, at the suggestion of E. Barksdale, who was his father, appointed a commissioner to make the sale. Commissioner Barksdale made the sale on the 25th July, 1874, at which Andrew Easly and others became purchasers at the price of $2580.60, and reported his sale on the 5th August following. By supplemental reports, the last of which was filed on the 6th of April, 1876, he reported all the deferred payments for the land to have

been made, and after paying off all liens prior to that of Carter's estate, he held in his hands a balance to the amount of $1725.-73. The judgment lien in favor of Samuel Carter's estate more than equals this amount, and there are liens following that of Carter's estate in priority to the amount of several thousand dollars. To this sale made by Commissioner Barksdale there was no exception, and it was duly confirmed. On the 20th of November, 1874, and on the 17th of December, 1875, orders were made referring to R. W. Watkins as commissioner sundry matters connected with these sales of the 301 acre tract of land. He was directed, among other things, to report all liens resting upon the land and their priorities; what amount E. Barksdale had paid on his purchase of January, 1869; what amount was due upon the judgment in favor of Carter's estate; who was entitled to the benefit of this judgment in the event that it had been sold by the distributees of Carter's estate; what amount had been paid for it if so sold; whether the judgment was obtained against Major, the bankrupt, as principal or surety; whether, if as surety, the principal obligor was not responsible, and whether this judgment could not be enforced against the principal obligor's estate; whether, if so, Carter's representative was seeking to enforce the claim against the principal obligor's estate, etc., etc. This commissioner made reports dated respectively on the 9th August, 1875, and April 1st, 1876, responsive to these orders of reference, which showed a balance still due to Carter's estate from the bankrupt's estate of $1857.27; and that the lien of Carter's estate for this amount was the first lien in priority now binding the fund of $1725.73 in the hands of Commissioner W. R. Barksdale. One of these reports of Commissioner Watkins further showed that this judgment in favor of Carter's estate was due by Major as surety, and that suit was going on against the estate of the principal obligor, which latter was probably responsible for the debt. One of the reports further showed that half of the judgment of Carter's estate against Major's estate had been purchased by C. H. Cabaniss, executor of Carter's estate; and it further showed that the other half had been purchased by E. Barksdale, and paid for by W. R. Barksdale during the period when the latter held in his hands the balance of $1725.73 due from him as commissioner of this court. A petition has been presented by W. V. B. Moore, husband of one of the Misses Barksdale, in behalf of his wife and her sister, complaining of the hardship of their case, stating that they were in danger of being thrown out of a home which they had innocently purchased and paid for, and praying the protection of the court, etc.

From the extraordinary mass of matter, a great deal of it irrelevant, which incumbers the record of this case, I have eliminated the foregoing statement of such facts as control me in my decision on the questions presented. There may be some inaccuracies of detail in the statement, but none that can affect the judgment I am required to give on the leading facts thus evolved and set forth. It is useless to say what must appear self-evident, that the sale to Barksdale of January, 1869, was wholly illegal, null, and void, as to all the parties to the order of court under which it was made. As to lien creditors without notice the order of court by which the sale was directed was illegal, null, and void, not only in authorizing the sale itself, but as to most of its other provisions. It cannot be countenanced for a moment in a court of justice in bar of, or in any manner to prejudice, the rights of lien creditors without notice. As against such lien creditors the purchaser under the sale, E. Barksdale, has no title under it whatever, not even an equitable title; because he was in fiduciary relations as counsel of the assignee, Wood, to the trust with which the assignee was clothed. Nor is the case of the Misses Barksdale any better, however much they may really suffer by the sale being treated as null and void. The evidence shows that they actually paid E. Barksdale no money, but that he sought to pass off this land to them for a debt he had previously owed them. This debt, whatever it might have been, remains due from him to them now as fully as on the day on which they entered upon the land. On losing the land they are placed precisely where they stood before. Their claim against E. Barksdale is just where it was, and they have no right, either legal or equitable, to call upon the court to make good a debt due to them from E. Barksdale with land or its proceeds to which E. Barksdale has neither a legal nor an equitable right, and which the court itself has no power to divert from those to whom the land or its proceeds is legally and equitably due.

The sale to M. Palmer of 12th of December, 1873, was equally illegal, null, and void, as to all but the representatives of the liens of Hill and of Carter's estate. The former purchaser had no notice of the order under which it had been made, nor had any other lien creditor of the bankrupt. It is true that inasmuch as the judgment in favor of Carter's estate consumes all the proceeds of sale, it is not likely that any creditor later in priority would be disposed to impeach the sale; but non constat, that some subsequent creditor might have bid enough at the sale to afford him a surplus if he had had notice, and the court would on motion of any such creditor have set aside the sale because made without notice to him. E. Barksdale, too, having been a purchaser under an order of sale made by the court, and having had no notice of the "application" on which the sale of the 12th December, 1873, to Palmer was made, had a right to an order setting

aside the sale on his mere motion, though the order which he did obtain for that purpose not having been put in the record was futile. It is therefore my decision that the sales of January, 1869, and December, 1873, were illegal, null, and void, as to lien creditors without notice. Any lien creditor aggrieved by them would have been heard to impeach them, and they would have been at any time set aside by me on motion and notice. This was done in the proceedings which resulted in the consent order of the 12th of March, 1874. That order was the first and only one under which a valid sale has been made of the land now in controversy. If that order did not in terms rescind the previous orders of sale, it did so by necessary implication. As against the liens which still bound the real estate of the bankrupt on the 12th of March, 1874, it was by necessary implication, being by consent implying notice to all parties actually interested, a rescission of the former orders on the subject-matter to which it related, and was so understood to be by the court, and must have been so understood to be by all those who were parties consenting to it. The sale of the 25th of July, 1874, to Andrew Easly and others is the only sale that has been made of the tract of land in question, which is valid as to the judgment liens of Hill and Carter's estate. The whole proceeds of that sale, so far as they were appropriated in pursuance of the consent given in the order of the 12th of March, 1874, must go to discharge the liens binding upon the land. E. Barksdale's claim to the surplus of purchase-money paid by Easly under the last sale, over and above that bid by himself at the first sale cannot be entertained. In the consent order of 12th March, 1874, the representatives of Carter's estate agreed to allow on the purchase-money of the 301 acre tract of land any payment that might be proved to have been made by E. Barksdale on the liens existing on the said lands, and impliedly consented to allow any payments that might have been made by the said Barksdale on the purchase-money of the land he had bought after being charged with the rents and profits of the land for the period during which he had held possession since January, 1869. I say there was an implied consent that these latter payments should be allowed, though the decree only directed an account of these payments and of these rents and profits to be taken; for the subsequent proceedings which have been taken in the case connected with those matters all implied that such consent had been given, and would not have been taken if such consent had not been virtually given. Proceeding on the assumption that this consent had been given, the orders in reference to Commissioner Watkins were entered by the court and the case was heard on the reports of that commissioner, and on the various exceptions that were filed to these reports.

16 FED. CAS.—34

Upon a full and careful consideration of the evidence, notes of argument, reports of commissioners, and exceptions to the latter, which were submitted to me in November last, I made up the decree which was entered in this cause on the 19th of December. Upon as careful consideration of the case now, and of the papers subsequently filed, the evidence subsequently taken, and the notes of argument and oral arguments since submitted, I see no cause except in one particular to vary that decree in any material respect, and will not do so. As to the claim of Barksdale that Carter's executor can make his debt out of some other estate, that was the excuse made by W. W. Wood some six years ago when he was first called upon to account for moneys in his hands by this executor. It cannot be denied that where a creditor has two sources from which to recover a debt, he may elect the one from which to receive his debt. In this case it seems that the other recourse has produced nothing for six years; and this court can safely concede to this executor the right to make his money here. If hereafter the other resource should yield the fund, the assignee here may justly claim to be subrogated there to the rights of Carter's executor, and will be instructed to do so by this court. I do not think that this court should be required to pass upon the respective rights of persons to whom the distributees of Carter's estate may have assigned their interests in the judgment against Major's estate, and itself distribute this fund among them. That is more properly within the jurisdiction of the probate court, of which Carter's executor is an officer. But as it seems pretty clear that half that judgment belongs to E. Barksdale, who has deposited $1000 of the $1725.73 in his son's hands in bank to the credit of this court, in that respect and that alone I will modify the order of 19th December, 1876. As to whether the purchase of one-half of this judgment by Cabaniss, the executor of Carter's estate, and the purchase of the other half by E. Barksdale, were transactions which this court should or should not condemn, it will be time enough for it to pass its judgment when some one of the distributees, who would be the persons really aggrieved by those transactions, shall appeal to it for redress. I will sign an order dismissing the petition for review; and as to the petition filed on the 22d of December, 1876, revoking the order of that date, but discharging Commissioner W. R. Barksdale for the present from the duty of depositing to the credit of the court the $725.73 remaining in his hands, provided that security in some form be given by him that it will be held subject to any future requisition of the court.

Affirmed by the chief justice, on petition for revision.

———

MAJOR, In re. See Case No. 2,061.